IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

_____

MARTY EVANS,                          Cause No. CV 11-112-M-DWM-JCL

        Petitioner,

   vs.                                ORDER TO STATE TO FILE ANSWER
                                and
LEROY KIRKEGARD, Warden,               FINDINGS AND RECOMMENDATION
Montana State Prison; ATTORNEY         OF U.S. MAGISTRATE JUDGE
GENERAL OF THE STATE
OF MONTANA,

        Respondents.

_____

On August 17, 2011, Petitioner Marty Evans filed this action for a writ of

habeas corpus under 28 U.S.C. § 2254. Evans is a state prisoner proceeding pro se.

On September 6, 2011, Respondent ("the State") was ordered to file the state

court record. It complied on October 6, 2011. On December 8, 2011, Evans was

ordered to show cause why his petition should not be dismissed with prejudice as

procedurally defaulted. He was also ordered to clarify some of his claims and to

1

explain why 28 U.S.C. § 2254(e)(2) would not bar him from obtaining an evidentiary hearing. After a few extensions of time, he responded on May 23, 2012.

Many of Evans's claims should be denied, but an Answer is required as to (1) his claim that his sentence is grossly disproportionate to his crime and (2) his claim that mandating sex offender treatment as part of his prison term or as a condition of his suspended sentence violates his privilege against self-incrimination.

## I. Background[1]

Evans was charged in Montana's Twentieth Judicial District Court, Lake County, with one count of attempted sexual assault, a violation of Mont. Code Ann. §§ 45-4-103(1) and -5-502 (2007), and one count of indecent exposure, a violation of Mont. Code Ann. § 45-5-504(1). He pled not guilty and was tried by a jury in August, 2009. Pet. (doc. 1) at 3 ¶¶ 5-6.

In late November and early December 2008, Evans was staying in Polson with his cousin B.C. and her six-year-old deaf and speech-impaired child, T. Evans slept on the couch in the living room. B.C. and T. slept in B.C.'s room, although T. had her own room. Trial Tr. (doc. 10-2) at 127:9-128:20.

---

[1] Unless otherwise noted, all citations to the Montana Code refer to the 2007 version, which was in effect at the time of Evans's offense. The mother of the victim is identified by her initials and the victim by one initial.

Evans's Memorandum in support of his petition was filed twice, first as an attachment to the petition (doc. 1-1) and then separately (doc. 2). Document 2 is cited here.

On December 10, 2008, for the first time since Evans had come to stay, T. slept in her own room. Trial Tr. at 131:11-23. Evans drank two or three 24-ounce beers and fell asleep on the couch. B.C. went to her bedroom. A few minutes after she laid down, she heard the door of T.'s bedroom squeak open. She assumed T. was getting up to use the bathroom, but then she heard the door close again. She knew T. would not close her bedroom door if she made a trip to the bathroom, so she got up to check on her. The light was on in T.'s room. B.C. saw Evans lying in T.'s bed with his erect penis in one hand. His other hand was reaching for her sleeping daughter. B.C. screamed at Evans, who left the room to return to the couch. B.C. took T. into her own bedroom and waited, hoping Evans would leave. When he did not, she called the police. *Id.* at 132:7-138:23.

One of the officers who responded to the scene approached Evans and shook him to wake him. One officer audio-recorded the encounter; the tape was played for the jury. Trial Tr. at 160:18-163:10. Both officers testified they believed Evans pretended to be asleep and pretended to be more intoxicated than he actually was. *Id.* at 159:19-22, 163:19-165:8, 176:13-20. Evans's blood-alcohol content was 0.13. *Id.* at 169:25-170:9.

The officer who interviewed Evans about three hours after his arrest stated that he could smell alcohol, but, at the same time, Evans appeared to understand his

questions. Trial Tr. at 210:25-211:15. But the officer testified that he "didn't feel like I got an answer to just about anything. It was like every question had more than one answer." *Id.* at 185:2-4, 210:22-24. This interview was also taped and played for the jury.

Evans admitted that he was in T.'s bed. *Id.* at 209:22-210:12. He referred to T. as his "best friend." *See id.* at 214:25-217:8. He apparently stated that he was just "laying in bed with her and itching himself." *Id.* at 226:8-9. He also said that he sometimes slept in T.'s bed when no one else was home and that he had slept on her bedroom floor because she was an "aggressive" sleeper, tossing and turning a lot. *Id.* at 226:10-227:4, 232:13-233:10.

Evans's brother, Tim Bogess, testified that B.C. told him around 11 p.m. on the night in question that both she and Evans were drinking. B.C. denied both drinking and telling anyone she did. *Id.* at 246:4-247:2, 253:3-17, 255:17-256:3.

The jury convicted Evans on both counts. Verdict (doc. 10-15 at 49-50).

Because T. was under 16 years of age and Evans was more than three years older than she, he was subject to a mandatory minimum prison term of four years and a maximum penalty of life or 100 years in prison on the attempted sexual assault conviction. Mont. Code Ann. §§ 45-4-103(3), -5-502(3). His criminal history consisted of 18 misdemeanors and 12 infractions incurred on twenty different

occasions between June 2001 and October 2008, consisting primarily of resisting or obstructing officers, disorderly conduct, and drug- and alcohol-related offenses. Presentence Report at 2-3. He was described as a "problematic inmate" while awaiting sentencing. *Id.* at 3. Before sentencing, he wrote his brother and sister-in-law a "ten page diatribe of threatening and self-pitying statements" that "vacillated between threatening to kill himself and [threatening] others." *Id.* at 6 (doc. 10-14 at 40); Letter (doc. 10-14 at 63-74).

On October 1, 2009, Evans was sentenced to serve fifty years in prison, with twenty years suspended, on Count 1. On November 5, 2009, he was sentenced to serve six months in jail on Count 2, concurrent with Count 1. Judgment (doc. 10-8) at 1-2.

Evans appealed to the Montana Supreme Court but voluntarily dismissed his appeal on April 7, 2010. Order at 1, *State v. Evans*, No. DA 10-0003 (Mont. Apr. 7, 2010) (doc. 10-13). On June 10, 2010, he filed a petition for postconviction relief in the trial court. It was denied on September 10, 2010. Evans did not appeal. He applied for sentence review on October 21, 2010. His sentence was affirmed on June 2, 2011. *See* Case Register Report (doc. 10-1) Entries 72, 82, 83, 92.

Evans filed his federal petition on August 15, 2011. Pet. at 8, Pet'r Decl. ¶ C; *Houston v. Lack*, 487 U.S. 266, 270-71 (1988).

## II. Claims and Analysis

Although some or all of Evans's claims may be barred under the doctrine of procedural default, it is clear that he is not entitled to relief on the merits of the following claims. Therefore, it is more efficient to proceed to the merits. 28 U.S.C. § 2254(b)(2); *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (making detailed analysis of constitutional issue despite outstanding question as to procedural bar); *Gutierrez v. Griggs*, 695 F.2d 1195, 1198 (9th Cir. 1983).

"[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Wilson v. Corcoran*, __ U.S. __, 131 S. Ct. 13, 16 (2010) (per curiam); *Nunes v. Ramirez-Palmer*, 485 F.3d 432, 443 (9th Cir. 2007).

### A. Penalty Enhancement

Evans alleges that he was not advised of the penalty enhancement for persons who are convicted of attempted sexual assault against a person under the age of 16 and who are more than three years older than the victim. Pet. at 4 ¶ 15A; *see also* Mem. (doc. 2) at 3 ("I was not surprised by the charges, I was surprised by the punishment."). Without the enhancement, sexual assault is a misdemeanor punishable by six months in jail. Mont. Code Ann. § 45-5-502(2).

The Information and the Amended Information identified the offense as "a

Felony."  Both stated the maximum penalty was "life imprisonment or imprisonment for a term of not more than 100 years."  Both alleged that T. was under the age of 16 and that Evans was more than three years older than she.  Information (doc. 10-15 at 65-66); Am. Information (doc. 10-15 at 51-52); *see also* Mont. Code Ann. § 45-5-502(3).  Finally, on January 5, 2009, eight months before trial, Evans personally acknowledged that he faced a maximum penalty of 100 years in prison if convicted on Count 1.  Acknowledgment of Rights (doc. 10-15 at 60 ¶¶ 1-2).  This claim should be denied.

### B. Charges and Lesser Included Offenses

Evans contends that he was misinformed of the charges against him and any lesser included offenses.  Pet. at 5 ¶ 15B.  In his Acknowledgment of Rights, Evans was advised of a lesser included offense of resisting arrest.  Resisting arrest obviously is not a lesser included offense of attempted sexual assault.  Acknowledgment of Rights (doc. 10-15 at 60).

However, Evans fails to identify any applicable lesser included offense.  Nor was counsel ineffective for failing to request a lesser included offense instruction, because the facts did not support one.[2]  *See generally Bashor v. Risley*, 730 F.2d

---

[2]  A charge of attempted assault on a minor is possible where a person attempts "purposely or knowingly [to make] physical contact of an insulting or provoking nature" with a minor.  Mont. Code Ann. §§ 45-5-201(1)(c), -212(1).  But if the jury did not believe that Evans attempted to touch

1228, 1240 (9th Cir. 1984).

*State v. Rave*, 109 P.3d 753, 755-56 ¶¶ 15-19 (Mont. 2005), *cited in* Pet. for Postconviction Relief (doc. 2-2) at 8, 9, Postconviction Mem. (doc. 2-2) at 2, posed a different factual scenario. There, the defendant was accused of sexual assault with bodily injury, a different provision of subsection (3). Sexual assault without bodily injury is the misdemeanor offense. A sexual assault between two people can occur with or without bodily injury. Here, the only two people involved were Evans and T. If the jury found attempted sexual assault on the evidence presented, it would necessarily also find that T. was under 16 and Evans was more than three years older. The reasoning of *Rave* does not apply.

In his Brief Clarifying Claims, Evans alleges that indecent exposure is a lesser included offense of sexual assault. Br. Clarifying Claims (doc. 19) at 6. It is not. Evans's exposure of his penis was an element of indecent exposure, but it was not an element of sexual assault; and sexual contact was an element of sexual assault but not of indecent exposure. *Compare* Mont. Code Ann. § 45-5-504(1) *with id.* § -502(1). Therefore, two different offenses were charged under both state law, Mont. Code Ann. § 46-1-202(9)(a), or federal law, *Blockburger v. United States*, 284 U.S. 299,

---

T.'s sexual or intimate parts, *see id*. § 45-2-101(67), it would have had no reason to believe he attempted to insult or provoke her. Moreover, it was undisputed that T. was asleep.

304 (1932) ("where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.").  Indecent exposure does not constitute an attempt to attempt sexual assault, Mont. Code Ann. § 46-1-202(9)(b), and no penis need appear in the course of committing a sexual assault, *see* Pet. at 13 ¶ 15O ("one is a form of preparation of the other.").  Finally, the person injured or placed at risk by Evans's attempted sexual assault was T.; his indecent exposure was directed toward anyone who happened to see it, and in fact only B.C. did.  Mont. Code Ann. § 46-1-202(9)(c).

Again, the Information and the Amended Information correctly advised Evans of the charges he faced.  He had no realistic hope of submitting a lesser included offense to the jury.  This claim should be denied.

### C. Maximum Penalty

Evans states the maximum penalty for an attempted offense is either half the maximum for the completed offense or twenty years.  Pet. at 5-6 ¶ 15C.  It is not. Mont. Code Ann. § 45-4-103(3).  This claim is should be denied.

### D. Abandonment, Intoxication, and "Non-Violent Attempt"

Evans alleges that no substantial harm was done and "no act of actual danger committed," that he was "drunk and didn't know what [he] was doing and left the

area and never posed a threat." Pet. at 6 ¶ 15D. None of these allegations constitutes a defense. The prosecution established beyond a reasonable doubt that Evans intended to touch T.'s sexual or intimate parts, without her consent, directly or through her pajamas, to gratify his own sexual desire, and that he took a substantial step toward committing that act by undoing his pants, grasping his erect penis, and moving his hand in the direction of the sleeping victim. Mont. Code Ann. §§ 45-2-101(67), -3-103(1), -5-502(1). The fact that B.C. interrupted him does not give him a defense of abandonment. Intoxication is not a defense under Montana law. Mont. Code Ann. § 45-2-203. Violence is not an element; lack of violence is not a defense. This claim should be denied.

### E. Double Jeopardy

Evans asserts he cannot be convicted of both attempt and sexual assault. Pet. at 9 ¶ 15E. He was convicted only of attempted sexual assault. Judgment (doc. 10-8) at 1. This claim should be denied.

### F. Prior Inconsistent Statement

Evans claims that his conviction was based solely on a prior inconsistent statement. Pet. at 9 ¶ 15F. The trial testimony described above shows otherwise. The only allegedly inconsistent prior statement concerned whether B.C. was drinking on the night in question. It was up to the jury to decide whether she told Evans's

brother she was and whether she actually was. And, even if she was drinking, it was also up to the jury to decide whether that fact so undermined her credibility that it should not believe what she said she saw Evans doing in T.'s bedroom. But Evans himself admitted he was in T.'s bedroom; the jury was entitled to consider that as well. This claim should be denied.

## G. Proportionality Review

Evans claims his sentence was "overly excessive, extremely cruel and highly unusual." Mem. at 2; *see also* Pet. at 16 ¶ 15Z. In *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003), the United States Supreme Court held that, notwithstanding the "lack of clarity regarding what factors may indicate gross disproportionality," "[t]hrough [the Court's] thicket of Eighth Amendment jurisprudence, one governing legal principle emerges as 'clearly established' . . .: A gross disproportionality principle is applicable to sentences for terms of years." *Id.* at 72-73; *see also Ewing v. California*, 538 U.S. 11, 20 (2003).

Although the Eighth Amendment analysis is not well-defined, one relevant factor is the maximum penalty authorized in other jurisdictions. *E.g.*, *Kennedy v. Louisiana*, 554 U.S. 407, 422-26 (2008); *Solem v. Helm*, 463 U.S. 277, 299 (1983). A preliminary, truncated, and unsystematic review of maximum sentences authorized in a few other jurisdictions for offenses similar to Montana's definition of attempted

sexual assault on a child suggests that Montana's maximum penalty of life or 100 years for a first offense is comparatively harsh. *See, e.g.*, Conn. Gen. Stat. §§ 53-21(a)(2), 53a-35a(6) (20 years), or 53a-51, -73a (5 years); Ga. Code Ann. §§ 16-4-6(b), -4(a)(1) (10 years); Idaho Code §§ 18-306, -1506(1)(b) (twelve and a half years); Ind. Code §§ 35-41-5-1(a), -42-4-3(b), -50-2-6 (8 years); Nev. Rev. Stat. §§ 193.330(1)(a)(1), 201.230(1), (2) (20 years); N.D. Cent. Code §§ 12.1-06-01, -20-03(2)(a), -32-01(2) (10 years); S.D. Codified Laws §§ 22–4-1, -22-1.2, -6-1(6), -22-7 (seven and a half years); Utah Code Ann. §§ 76-3-203(2), -4-102(1)(e), -5-404.1(2) (15 years); Wyo. Stat. Ann. §§ 6-1-304, -2-314(a)(i) & (iii), (c) (50 years); *but see* Wash. Rev. Code §§ 9A.20.021(1)(a), -28.020(3)(a), -.44.083(1) (life).[3] Federal law defines an offense and authorizes a maximum of life in prison for abusive sexual contact with a child under twelve years of age. But there is no general federal crime of attempt, and the applicable statutes do not authorize prosecution for attempt. *See* 18 U.S.C. §§ 2244(a)(5), 2241(c), 2246(3); *compare id.* § 2241(a) ("or attempts to do so").

In addition, it is not clear what a petitioner must do to "fairly present" this claim to the Montana Supreme Court, as it "review[s] criminal sentences for legality to determine whether they are within the parameters set by statute." *State v. Thorp*,

---

[3]  All versions effective on the date of Evans's offense.

231 P.3d 1096, 1103 ¶ 42 (Mont. 2010) (internal quotation marks omitted). Evans presented his claim at a hearing before the Sentence Review Division. What he said is not in the record, and it appears there may have been some irregularities in the proceedings.

An Answer is required on this claim.

**H. Plea Offer**

Evans claims that the prosecutor "sentenced me higher for vindictive purposes and malicious intent and my insistence on going to trial and refusal to admit guilt and take 'responsibility' for my 'actions.'" Pet. at 10 ¶ 15H. It is not unconstitutional for a defendant to be sentenced more harshly when he goes to trial. *E.g.*, U.S.S.G. § 3E1.1 (authorizing three-level reduction in advisory sentencing guideline range when federal criminal defendant pleads guilty instead of contesting guilt at trial). Prosecutors' plea offers generally include sentencing recommendations or consequences that reflect the defendant's acceptance of responsibility. When a plea offer is not accepted, it has no weight or effect. The maximum sentence is set by statute, and the actual sentence is decided by the judge. This claim should be denied.

**I. Joinder**

Evans claims the district court had no jurisdiction to try him for misdemeanor indecent exposure. Pet. at 11 ¶ 15I. It did. Mont. Code Ann. § 3-5-302(1)(a), (2).

This claim should be denied.

**J. Sex Offender Treatment**

A mandatory program requiring a person to admit he is guilty of a crime for which he has already been convicted generally poses no threat of incrimination. *Neal v. Shimoda*, 131 F.3d 818, 833 (9th Cir. 1997). However, it is not clear to what extent Evans was protected against self-incrimination in light of his allegation that he was required to participate while his case was on appeal and while he contemplated collateral attack. Pet. at 11 ¶ 15J. The timing of the required admissions was an important factor in *Neal*. Additionally, Evans's allegations suggest that the only opportunity for treatment he will have while he is serving the thirty-year prison term of his sentence – and thus his only opportunity to meet a condition precedent to a possible parole – came and went while his case was pending on appeal. *Id.*; *cf. also United States v. Antelope*, 395 F.3d 1128, 1137-38 (9th Cir. 2005) (discussing *Lile v. McKune*, 536 U.S. 24 (2002) (opinions of Kennedy, J., and O'Connor, J., concurring in the judgment)). An Answer is required on this claim.[4]

**K. "Procedure Bar"**

This claim, *see* Pet. at 11 ¶ 15K, does not allege a basis for relief against the

---

[4] Evans was designated a Level 3 offender, with "the ability to have that reduced once he has gotten a handle on his alcohol problem." Judgment (doc. 10-8 at 10). *But see* Mont. Code Ann. § 46-23-502(11)(b), -509(3)(b)-(c), (4).

conviction or sentence.  It should be denied.

### L. Amended Petition for Postconviction Relief

Evans asserts that he "filed for an amended post conviction when my petition was denied . . . but that petition was never heard from."  Pet. at 12 ¶ 15L.  On August 9, 2010, he filed a "Notice to File Amended Post-Conviction Relief," stating that he intended to file an Amended Petition on or before October 1, 2010, and seeking clarification of the filing deadline.  Notice (doc. 10-10 at 16); Case Register Report (doc. 10-1) Entry 81.  The trial court denied the postconviction petition on September 10, 2010.  Any error in the trial court's procedure could have been corrected on appeal to the Montana Supreme Court, but Evans did not appeal.  This claim presents no federal ground for relief and should be denied.

### M1. Invalid Jury Instructions / Amendment

Evans alleges that the charge against him was amended only three days before trial and he was not arraigned on the Amended Information.  He also alleges that he was "basically convicted of the actual crime, without any hard physical evidence, and D.O.C. classified me under Sexual Assault 'High Severity' instead of ATTEMPT what I was charged with."  Pet. at 12 ¶ 15M[1].

The original Information charged Evans with "committing the offenses of SEXUAL ASSAULT (ATTEMPT), a Felony, Count I, as specified in MCA 45-5-502,

with a maximum punishment as provided by law of life imprisonment or imprisonment for a term of not more than 100 years . . . and INDECENT EXPOSURE, First Offense, a Misdemeanor . . . ." Information (doc. 10-15 at 65). The Amended Information charged Evans with "committing the offenses of ATTEMPT (SEXUAL ASSAULT), a Felony, Count I, as specified in MCA 45-5-103[5] and 45-5-502." Am. Information (doc. 10-15 at 51). In both documents, Count I alleged:

> On or about December 10, 2008, in Lake County, Montana, the Defendant, with the intent to commit the offense of Sexual Assault, reached toward T.[] while she was in her bed and he was fondling his own exposed genitals, in order subject [sic] T.[] to sexual contact without consent. T.[] is under the age of 16 and more than three years younger than the Defendant.

Information (doc. 10-15 at 66); Am. Information (doc. 10-15 at 52).

The charging documents are not perfect, but perfection is not the standard. A charging document must "contain[] the elements of the offense intended to be charged and sufficiently apprise[] the defendant of what he must be prepared to meet" as well as enabling him to "plead a former acquittal or conviction" in the event "other proceedings are taken against him for a similar offense." *Russell v. United States*, 369 U.S. 749, 763-64 (1962). Here, both charging documents clearly involve

---

[5] Mont. Code Ann. § 45-5-103 defines the crime of mitigated deliberate homicide. Attempt is defined by Mont. Code Ann. § 45-4-103.

attempt, even though the code section is not correctly cited, and both documents' description of the offense meets all the elements of attempted sexual assault under Mont. Code Ann. §§ 45-4-103(1) and 45-5-502(1) and (3). Although Evans does not discuss the jury's instructions, they were correct. Trial Tr. at 257:11-258:16.

As for Evans's classification by the Department of Corrections, there is no sense in predicating classification on the offense of attempt, though it is technically the offense that is committed. A classification that placed together persons convicted of attempted impersonation of public servant and persons convicted of attempted deliberate homicide would be irrational. The gravamen of the offense is what Evans attempted to do. His classification is not objectionable.

This claim should be denied.

**M2. Juror Bias**

### 1. Jurors with Connections to Law Enforcement

Evans contends that "numerous jurors" were "related and/or close relations with police, sher[]iffs and jailers and witnesses."[6] Specifically, he states that one juror, Ward, lived with "a rape victim . . . who is a jailer at Lake County Jail," and

---

[6] Lake County does not have a large population of potential jurors. One juror, Ms. Owen, was excused because her son was visiting from Boston and would be in town for only a few days. After she was excused, another juror raised his hand to offer grounds for being excused. He was Mr. Owen. He, too, was excused. Trial Tr. (doc. 10-6) at 38:14-39:19.

one juror was "a sher[]iffs wife."  Pet. at 12 ¶ 15M[2].  Evans was given an opportunity to point to any indication or evidence of juror bias he might be aware of.  Order to Show Cause (doc. 11) at 8.  He adds that there were "several jurors with relationships to law enforcement officers."  *Id.* at 4-5.

"One touchstone of a fair trial is an impartial trier of fact – 'a jury capable and willing to decide the case solely on the evidence before it.'"  *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984) (quoting *Smith v. Phillips*, 455 U.S. 209, 217 (1982)); *see also Fields v. Brown*, 503 F.3d 755, 764-65 (9th Cir. 2007) (en banc).

Evans is correct that a number of jurors and prospective jurors had family members in law enforcement careers.  In addition to living with a victim of sexual assault, Juror Ward was also a cousin of the sheriff, and he apparently worked for the county.  The transcript suggests that defense counsel knew him as well.  He unequivocally responded to both attorneys' questions by indicating that he was capable and willing to decide the case solely on the evidence.  Trial Tr. (doc. 10-6) at 27:10-28:13, 37:15-16, 82:8-19, 93:13-94:18.  Juror Johnson worked as a law enforcement officer for the State Department of Natural Resources and Conservation.  He said he would tend to trust officers he had worked with, but he had not worked with any of the State's potential witnesses in Evans's case, and he believed he could

be fair.  *Id.* at 82:20-83:25.  Jurors Althouse and Ward knew witness Deputy Ewers[7] because they all worked for the county, but both said they would treat his testimony the same as anyone else's.  *Id.* at 36:10-37:25.

Evans also contends that the combination of "alleged actions against a young girl with a disability" and "[n]o favorable character witnesses" called on his behalf meant that "it would be highly improbable that the average juror could remain unbiased."  Br. Clarifying Claims at 4.  Child murder trials are constitutionally viable; there is no reason to believe Evans's trial was not.  This claim concerns the nature and quality of the evidence and counsel's decision not to call character witnesses.  It is not a claim against the jurors.  It will not be addressed here.

Based on the trial record – and Evans offers nothing more – there is no reason to believe the jurors were anything less than fair and impartial.  This claim should be denied.

### 2. Jury of Peers

---

[7]  The prosecutor described Ewers as "kind of hard to miss sometimes," Trial Tr. at 36:20, suggesting a physical distinction of some sort.  Jurors Althouse and Ward did not claim they knew him personally.  Another juror, Violette, testified that she knew Ewers because he was a school resource officer when she was in high school.  Yet another, Ms. Owen, knew Ewers, his children, and his wife.  Neither Violette nor Owen was seated on the jury.  *Id*. at 37:3-14, 104:5-8.

Yet another juror mentioned by Evans, Gullickson, was a lieutenant's daughter and was married to a retired deputy sheriff.  Trial Tr. at 48:6.  She was not seated on the jury.  *Id.* at 104:5-8.  In his postconviction petition, Evans mentioned that yet another juror, Larson, was a "direct relation to Lucky Larson," who presumably is or was an officer.  Postconviction Pet. (doc. 10-15 at 29).  Larson was not seated on the jury.  *Id.* at 104:5-8.

Evans asserts that "the jury was not comprised of my 'peers'" because "[t]he only two Native American jurors were mothers of children," Br. Clarifying Claims at 3, and there was "a lack of male Native Americans on the jury," *id.* at 4. The transcript does not indicate the race or ethnic group of any of the jurors – nor, except as to some, which jurors had children. *E.g.*, Trial Tr. at 84:15-86:5.[8]

Assuming the truth of Evans's assertions, however, his entitlement to "a jury of his peers" does not mean the State was required to empanel a statistically representative group of residents of Lake County. In Montana, persons whose names appear on the list of registered voters or who hold a driver's license or a Montana identification card, Mont. Code Ann. §§ 3-15-402, 61-5-127(1), and who meet the basic qualifications of age, residence, and lack of felony convictions, *id.* §§ 3-15-301, -303, may be called for jury service. There is no reason to suspect these criteria result in the systematic exclusion of Native Americans generally or of Native American men in particular. *See, e.g.*, *Coleman v. McCormick*, 874 F.2d 1280, 1283-84 (9th Cir. 1989).

"[A] timely objection to the prosecutor's use of peremptory challenges is a prerequisite to a *Batson* challenge." *Haney v. Adams*, 641 F.3d 1168, 1173 (9th Cir. 2011). In neither his federal petition nor in his Brief Clarifying Claims has Evans

---

[8] The juror involved in this discussion was not seated on the jury.

alleged that the prosecution wrongfully exercised its peremptory challenges. *See Batson v. Kentucky*, 476 U.S. 79 (1986); *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994). He does not identify, and the record does not reveal, any fact that could support an inference of intentional invidious discrimination in jury selection. *See, e.g.*, *Kesser v. Cambra*, 465 F.3d 351, 359-60 (9th Cir. 2006) (en banc); *United States v. Willie*, 941 F.2d 1384, 1399 (10th Cir. 1991); *see also* Postconviction Pet. Grounds 8, 28 (doc. 10-15 at 23, 29); Postconviction Mem. (doc. 10-15 at 17); Postconviction Aff. (doc. 10-15 at 6); Postconviction Evidence Grounds 8, 28 (doc. 10-15 at 10, 12). Evans alleges nothing that could conceivably support such a challenge, not even an allegation of ineffective assistance of counsel.[9] Because he "failed to develop the factual basis of [the] claim in State court proceedings," he cannot initiate it and substantiate it now in federal court. 28 U.S.C. § 2254(e)(2). In addition, such a claim would be time-barred, because there is no "common core of operative facts" that would allow the claim to relate back to the petition's filing date. *Mayle v. Felix*, 545 U.S. 644, 664 (2005). This claim should be denied.

### N. Unlawful Search and Seizure

Evans objects to the swabbing of his hands and penis for DNA evidence. Pet.

---

[9] A statement that counsel's "jury pick, which he seemed to try his hardest on, was still terrible" is the nearest Evans comes to an allegation of ineffective assistance on this basis. Postconviction Mem. (doc. 10-15 at 17).

at 13 ¶ 15N.  No evidence of that description was introduced at trial.  This claim should be denied.

### O. "More" Double Jeopardy

Evans contends that he was "charged in the information of exposing my penis twice."  Pet. at 13 ¶ 15O.  The elements of the offense, not the facts in evidence, determine whether cumulative punishment may be imposed for two offenses charged in one prosecution.  *United States v. Dixon*, 509 U.S. 688, 696 (1993); *see also id.* at 704 (abandoning "same conduct" test of *Grady v. Corbin*, 495 U.S. 508 (1990), in favor of the *Blockburger* "same elements" test).  As determined above, *see supra* Part II.B, there was no double jeopardy.  This claim should be denied.

### P. Character Witnesses

Evans claims "[t]his was a trial of hearsay within hearsay of witnesses, not any victim, so obviously a 'character' witness on my behalf should be required if possible."  He also claims his family members wanted to testify for him but "the courts told them it was a conflict of interest."  Pet. at 13-14 ¶ 15P.

In taped interviews played for the jury at trial, Evans three times admitted he was in bed with T.  The prospect that his friends and family would have said he "was a good person, never engaged in sex crimes and had a good future" does not make it reasonably probable that he would have been acquitted if they had testified.  This

claim should be denied.

### Q. Post-Conviction Petition

Evans was previously advised that the Court will not "consider all grounds brought up in post-conviction relief." Pet. at 14 ¶ 15Q; *see* Order to Show Cause at 10 ¶ III.D. This claim, if it is one, should be denied.

### R1. Cumulative Error

Evans has not identified any trial error, so there could not be cumulative error. This claim should be denied.

### R2. Right to Be Present

After reviewing the trial court's docket, Evans concedes he was present at all hearings. Br. Clarifying Claims at 5. This claim should be denied.

### S-Z. Other Claims

Evans does not state anything in Ground S that has not already been addressed. Although he includes no claims labeled T through Y, he states Claim S on the page he numbers 7 and Claim Z on the page he numbers 8. Pet. at 15-16 ¶¶ 15S, 15Z. All claims have been addressed.

Based on the foregoing, the Court enters the following:

**ORDER**

1.  The State is deemed served by electronic delivery of this Order to the Montana Department of Justice general e-mail address for court filings as well as to counsel C. Mark Fowler.

2.  The State must file an Answer to **Claims G and J** of Evans's Petition on or before **September 17, 2012**. A motion in lieu of an Answer is not permissible, but the Answer may be accompanied by a motion.

3.  Within twenty-one days after the State serves its Answer, Evans may file a Reply, limited to **ten (10) pages**, excluding exhibits. If the State also files a motion, Evans may respond to it within twenty-one days after its service. Evans's brief in response to any motion must be limited to **fifteen (15) pages**, excluding exhibits. The State may file a reply in support of any motion within fourteen days after filing of the response in accordance with D. Mont. L.R. 7.1.

4.  **Unless State's counsel objects within seven (7) days of the date of this Order**, Evans need not serve on the State the materials he files with this Court. The State will be served via the electronic filing system. The State must, however, serve on Evans a complete copy of everything it submits to the Court.

The Court also enters the following:

## RECOMMENDATION

Claims A-F, H-I, K-Z of the Petition should be DENIED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS &
## RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Evans may serve and file written objections to this Findings and Recommendation within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing. If Evans files objections, he must itemize each factual finding to which objection is made and must identify the evidence in the record he relies on to contradict that finding; and he must itemize each recommendation to which objection is made and must set forth the authority he relies on to contradict that recommendation. Failure to assert a relevant fact or argument in objection to this Findings and Recommendation may preclude Evans from relying on that fact or argument at a later stage of the proceeding. A district judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendation. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

Evans must immediately notify the Court of any change in his mailing address

25

by filing a "Notice of Change of Address."  Failure to do so may result in dismissal

of his case without notice to him.

DATED this 20th day of July, 2012.

 /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge